ANTON WALDIN ET AL., Petitioners and Appellants, *v.* RAFAEL FELICIANO PACHECO, WARDEN OF THE DISTRICT JAIL OF HUMACAO, P. R., Respondent and Appellee.

No. 8647. Argued May 24, 1943.—Decided June 8, 1943.

*Juan Nevares Santiago* for appellants.  *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney*, for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

This is a habeas corpus proceeding.   The appellants allege that the District Court of Humacao erred in entering an order ·denying their petition, (1) in deciding that the $10,000 bail required from each one of the petitioners to remain in provisional liberty was not excessive;  (2) in deciding that there exists probable cause to justify the filing of an information for murder against the petitioner;  and (3) in deciding that the petitioners had no right to be assisted by counsel during the preliminary investigation of the district attorney.

From the record it appears that the petitioners were arrested on July 25, 1942, by order of the District Attorney of Humacao, charging them with the commission of the crime of murder in the first degree, and $10,000 bail was fixed for them to remain at provisional liberty;  that on that same day

they filed their petition for habeas corpus and the court fixed $2,000 bail to remain at provisional liberty while their petition was ending. This bond was posted immediately by the petitioner, and also another for $5,000 when the court increased it to that amount.

The evidence showed that the petitioners worked at the naval base at Ensenada for the Arundel & Consolidated Engineering Co., earning a salary of $96 weekly, and that although they said that they did not have any friends or know people in Puerto Rico, they each obtained $2,000 in cash to post the first bond, and also sureties for $5,000, to post the second one and they were not confined for more than two hours after their arrest.

With regard to the determination of whether the bond required in a case is excessive, this court, in *Ex Parte Collazo*, 52 P.R.R. 103, 106, 107, decided that the following were the elements to be taken into consideration:

"... (a) the nature and gravity of the offense with which the defendant is charged; (b) the financial capacity of the defendant to furnish the bail required of him; (c) the probability that the defendant will be convicted; and (d) the severity of the penalty for the offense. ..."

It was expressly decided in that case that evidence of insufficient means to post the bond required, no matter how complete and convincing might be, is not in itself sufficient to interfere, through habeas corpus, with judicial discretion in order to obtain reduction of bond

Elements (a) and (b) are present in the instant case in their maximum degree, since the petitioners are charged with the crime of murder in the first degree, which carries with it a life imprisonment penalty. With regard to (c), that is, to the probability of the petitioner being convicted, this is intimately related with the second reason for the petition as to whether there exists probable cause for the arrest. In order to sustain this, the district attorney introduced the testi-

mony of the doctor who performed the autopsy upon the deceased Inés Cruz, which showed that he died as a consequence of a necessarily fatal wound produced by a steel weapon which penetrated the base of the lung, producing an internal hemorrhage. There was also admitted in evidence the sworn statement given by Santos Cuadrado before the Justice of the Peace of Ceiba which, in its pertinent part, reads as follows:

" . . . that on July 24, 1942, at about 7:30 p. m., I was at the road crossing at Ensenada Honda, with Inés Cruz, *alias* Maneco, with Pedro Agosto and with other persons whom I do not know; that there was there at said hour an American whom the people call 'Feo' passed by; that then a boy whom I do not know and who was there, called him 'Feo'; that he came back and told him 'You said me "Feo"?' And the boy told him 'No, I did not'; that the American left and the boy again said 'Feo'; that then the American said in Spanish 'Un momentito' and left and came back soon with another American; that when the Americans arrived, they faced Inés Cruz, and the American, whom they call 'Feo', ran the horse over Inés; and then I told him in English that he was not the person who had called him 'Feo'; then the other American told me in English why did he run if it was not he; then I told him that he (Inés) did not run because it was he who did it, but because the other had tried to run the horse over him; that 'Feo' stayed and the other American left and soon came back, together with three more Americans, in an automobile; and when said American arrived, Inés was inside the restaurant and the American called him out and I told Inés not to go and Inés did not go; that then the one whom they call 'Feo' came into the restaurant to take him out, and Inés started running; that when he started running, toward the road, the other American grabbed him and beat him with a whip and with a knife wounded him in his left costal region, while 'Feo' beat him with another whip from behind; that Inés fell down almost dead; that they carried him into an automobile to take him to the hospital and he died on the way, as I later learned; that I can identify the American who killed him, because although I do not know his name I have seen him many times before; and when I was asked to identify him I pointed him out and when they asked him his name he said he was Iv Lee McDougle; that I pointed out the American whom they call 'Feo' and that when asked his name, he said it was Anton Henry Waldin, Jr."

Lastly, the district attorney testified that he had in his possession five or six additional statements from other witnesses to the same effect as Cuadrado's, and also one from the defendant, Ivry McDougle denying the facts charged against him.

We have repeatedly decided that in a habeas corpus proceeding the district attorney has only to prove that he has obtained a *scintilla* of evidence to justify the arrest of the defendant as the presumptive author of the offense charged. *People* v. *Pillot,* 19 P.R.R. 250; *Ex parte Baigés,* 26 P.R.R. 135; *Ex parte Pagán,* 46 P.R.R. 886; *Ex parte Anés Pillot,* 58 *D.P.R.* 948 (*per curiam decision*). The sworn statement of the witness Cuadrado establishes by itself the *scintilla* of evidence against the appellants in this case and constitutes the probable cause for their arrest for the crime of murder in the first degree. If the jury, at the proper time, believes the said evidence, there can be no doubt of the existence of element (*c*), pointed out in the case of *Ex parte Collazo, supra,* with regard to the probability of the appellant-petitioners being convicted.

■ As regards the economic ability of the petitioners to post the required bond, it is our opinion that the inferior court did not err, in deciding, in accordance with the facts proved, that they were in a condition to post it, especially if there is taken into consideration the ease with which they furnished the $5,000 required for this petition. The first two errors were not committed.

■ With regard to the third, in which it is alleged that the petitioners were deprived of the right to be assisted by counsel during the preliminary investigation, the appellants have not placed this court in a position to decide the question raised.

From the careful examination that we have made of the record before us, the only thing that appears with regard to the preliminary investigation is the following: 1, the allegation by the petitioners in their amended petition to the

effect that no counsel was named for them in said investigation; 2, the testimony of District Attorney Camacho to the effect that he examined eight or ten witnesses at Ceiba while investigating the case; and, 3, the order of the inferior court dismissing the point raised under the authority of *People* v. *Travieso*, 60 P.R.R. 518.

The petitioners did not introduce evidence of any sort to show in what manner the preliminary investigation was made by the district attorney; whether the defendants were present and whether they were advised or not in any manner as to the right they had to be assisted by counsel. Neither was this evidence furnished by the testimony of the district attorney, since, as we have already said, said officer limited himself to saying that he had taken the testimony of several witnesses who testified in the same manner as Cuadrado.

In *People* v. *Travieso, supra,* we decided, as appears from the syllabus, that:

"The lack of jurisdiction of the court over the person of the accused, on the ground that the latter had no assistance of counsel from the time of his arrest and during the preliminary examination in the proceedings, is a question which, if such examination be a prerequisite, can not be considered on appeal when the record fails to show the date of the arrest and whether or not there was a preliminary examination during which the accused was deprived of his right to be represented by counsel."

A similar situation exists in the instant case.

The appeal should be denied and the order appealed from affirmed.